IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF UTAH

| | | |
|---|---|---|
| Delores Ovard, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | **SECOND AMEND COMPLAINT AND** |
| v. | ) | **JURY DEMAND** |
| | ) | |
| | ) | Civil No: 2:11-cv-00592-DAK |
| Summit County | ) | Judge Dale A. Kimball |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff, Delores Ovard, by and through her undersigned counsel, files this Second Amended Complaint against the Defendant, Summit County, as follows:

**JURISDICTION**

1. This court has original jurisdiction of this action pursuant to the provisions of 28 U.S.C. §1331.

**VENUE**

2. Venue is proper in this court pursuant to the provisions of 28 U.S.C. §1391.

**PARTIES**

3. Plaintiff is an individual residing in Summit County, Utah.

4.	Defendant Summit County (together with the employees, elected and appointed officials, agents of and others acting on behalf of Summit County, collectively, the "County" or "Defendant") is a political subdivision of the state of Utah.

## GENERAL ALLEGATIONS

5.	The Plaintiff was born in 1942 and is presently 70 years of age.

6.	The Plaintiff complained to the UALD and EEOC that the Defendant discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621 *et seq*, 29 U.S.C. § 630(b).  The Defendant is an employer subject to the ADEA.  A charge was issued on September 7, 2010.  The charge was amended, to add additional claims, and the amended charge was issued on November 8, 2010.  The EEOC issued a Notice of Right to sue dated March 28, 2011.

7.	The Plaintiff filed another charge with the UALD and EEOC alleging that the Defendant retaliated against her in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621 *et seq*, 29 U.S.C. § 630(b).  The EEOC issued a Notice of Right to on theis charge on  February 24, 2012.

8.	The Plaintiff has been employed by the Animal Control Department (hereinafter "Animal Control") of Summit County since September of 1993.  During all times pertinent hereto she is and has been the oldest employee working in the Animal Control.

9.	During the course of her employment, the Plaintiff  received promotions, commendations, and  awards for her excellent service.  The Plaintiff first worked as an Animal Control Officer I, was then promoted to Officer II, then Officer III.  In June of 2004 she was

2

promoted to Field Officer, and as such, she supervised all of the other Officers (Officers I-III) working for Animal Control.

10.     At all pertinent times hereto, the Plaintiff's job description as Field Officer included the following duties and responsibilities:

    A.  Provides close to general supervision to Animal Control Officer III, II and I.

    B.  Directs the day to day field activities of animal control

    C.  Monitors Animal Control Officer effectiveness and quality of work;

    D.  Provides field training in public relations methods, apprehension methods, field equipment, etc.;

    E.  Performs regular appraisal of employee performance to increase employee knowledge, skills and abilities;

    F.  Assists in the operation, management and maintenance of animal shelter in the absence of the department administrator;

    G.  Assists in preparation of a budget; requests and prepares purchase orders of needed supplies; prepares a variety of reports to maintain updated information on animal control activity;

    H.  Develops and delivers public education programs as needed; maintains contact with attorneys, judges, justices to assure correct legal procedures are followed:

    I.  Assists veterinarians with rabies clinics; etc.

11.	An Officer III's job description does not include the duties listed above at ¶10 and its subparts (a) through (i).

12.	In approximately November of 2004 Animal Control began reporting to Dave Booth ("Booth") who was employed by the Summit County Sheriff.  In December of 2004 Robert Bates (" Plaintiff's Supervisor") retired from his employment with the Summit County Sheriff's Office.  In January of 2005 Bates was hired to serve as the Director of Animal Control and as such he supervised the Plaintiff.

13.	From January of 2005 until January of 2011 Plaintiff's Supervisor reported to Booth, except for a period of time in late 2009/early 2010 to approximately May of 2010, when Plaintiff's Supervisor reported to Dean Carr ("Carr") who was also employed by the Summit County Sheriff.

14.	After her promotion to Field Supervisor in June of 2004, and until April of 2006, the Plaintiff was regularly scheduled to work Monday through Friday from 8:00 am to 4:30 pm.  In approximately April of 2006 Officer Shellie Keetch ("Officer III") was taken out of the rotation schedule and was scheduled to work Monday through Friday.  Officer III worked Monday through Friday from approximately April of 2006 until January of 2011. 15.	From approximately January of 2005 until January of 2011, except for a brief period of time in 2010, Plaintiff's Supervisor and/or Booth determined the work schedule for all of the employees of Animal Control, including the Plaintiff.

16.	From April of 2006 until January of 2011, the Plaintiff's work schedule was as follows:

      A.      April of 2006 to March of 2007, the Plaintiff was put into the rotation schedule, rotating weekends with most of the Officers working in Animal Control.

B.      March 2007 to January 2011, except for a brief period of time in 2010, Plaintiff worked every weekend of every month of every year

      C.      March 2010 to approximately June 12, 2010 the Plaintiff worked Monday through Friday, 8:00 am to 4:30 pm.

      D.      June 12, 2010 to January 2011, the Plaintiff worked the late shift Monday through Wednesday 11:30 am to 8:00 pm, and Saturday and Sunday 8:00 am to 4:30 pm.

17.      Because the Plaintiff was forced to work every weekend, and forced to work the late shift, she found it difficult, if not impossible, to see and visit with her family, attend family affairs, or have a social life.

18.      From March of 2007 to January of 2011 (except for a brief period in 2010) no employee of Animal Control, other than the Plaintiff, was scheduled to work every weekend of every month of every year.

19.      Beginning in 2006 and continuing through January of 2011, many of the Plaintiff's job duties were assigned to Officer III, who is much younger than the Plaintiff. . Pursuant to the Plaintiff's job description, she was supposed to supervise Officer III, but Plaintiff's Supervisor began to directly supervise Officer III.

20.      Some of the Plaintiff's duties assigned to Officer III included supervisory authority over the Officers, as well as the management of the animal shelter. Officer III is approximately 29 years younger than the Plaintiff.

21.     In approximately January of 2010 the Defendant issued a new organizational chart for Animal Control which showed the Plaintiff reporting to Officer III and Officer III reporting to Plaintiff's Supervisor. In approximately March of 2010 the Defendant issued job descriptions for Officer III and for the Plaintiff. Officer III's job description included duties that should have been and which previously had been performed by the Plaintiff.

22 .    The Plaintiff complained to the Defendant's Human Resource Director on numerous occasions, including in January, 2010 , about the disparate treatment and favoritism shown to Officer III, about her weekend work schedule, and the assignment of Plaintiff's job duties to Officer III. The Defendant did not investigate the Plaintiff's complaints, did not advise the Plaintiff that her complaints were investigated, and took no action to resolve the Plaintiff's complaints.

23.     From approximately late 2009 and/or early 2010 until approximately May or June of 2010, Plaintiff's Supervisor, reported to Carr.

24.     In approximately February of 2010 the Plaintiff complained to Carr about her work schedule, the assignment of her job duties to Officer III, and the disparate treatment.

25.     Thereafter Carr ordered Plaintiff's Supervisor to schedule the Plaintiff to work Monday through Friday during regular office hours. He further ordered Plaintiff's Supervisor to meet with Plaintiff to review the assignment of Plaintiff's duties to Officer III.

26.     Plaintiff's Supervisor did not meet with the Plaintiff about the job duties, and Officer III continued to perform many of the Plaintiff's job duties up until January of 2011.

27.     From March 2010 to June 11, 2010, as ordered by Carr, the Plaintiff was assigned to work a normal work schedule during regular office hours.

28.     In May of 2010 Carr and/or the Defendant's Human Resource Department directed the Plaintiff to prepare Officer III's performance evaluation.  Officer III's evaluation was sent to the Plaintiff over the Defendant's computer system.  When Plaintiff's Supervisor found out that Plaintiff was directed to perform Officer III's evaluation, he became angry, told her not to prepare it, and told her to log on to her computer so that he could use her computer to prepare the evaluation.

29.     The Plaintiff thereafter contacted the Human Resource Department to obtain clarification as to who was to perform the evaluation, and Plaintiff's Supervisor was advised that the Plaintiff was to perform the evaluation.

30.     On or about May 18, 2010, the Plaintiff was reprimanded by Booth during a meeting with Booth and Plaintiff's Supervisor in Booth's office, for preparing Officer III's performance evaluation, for following the directives of the Human Resource Department, and for not 'following the chain of command'.    Booth's statements during this meeting were made in an angry and hostile manner.

31.      On or about May 21, 2010 the Plaintiff had another conversation with Booth where he asked her, as he had on other occasions, wasn't it time that she retired.

32.      On May 26, 2010 the Plaintiff was issued a written disciplinary warning signed by Plaintiff's Supervisor for not following the chain of command when she prepared Officer III's performance evaluation.

33. In approximately May or June of 2011 Plaintiff's Supervisor once again reported to Booth.

34. Beginning in June, 2010 and until January 2011 Plaintiff's Supervisor and/or Booth, changed the Plaintiff's schedule back to working every single weekend. In addition, she was made to work the late shift. The Plaintiff's work hours were Monday through Wednesday from 11:30 a.m. to 8:00 p.m., and Saturday and Sunday from 8:00 a.m. to 4:30 p.m. The later weekday shift, coupled with the weekend shift, made it even more difficult for the Plaintiff to see or visit with her family and to attend to personal and family affairs.

35. Plaintiff's Supervisor performed Officer III's evaluations from 2005 toat least 20, and in 2010 told the Plaintiff to raise the score for Officer III's evaluation.

36. The Plaintiff, and not Plaintiff's Supervisor, should have prepared Officer III's evaluations. Plaintiff was Officer III's supervisor. The Plaintiff prepared the evaluations for all of the other Officers, and there was no reason why the Plaintiff should not have performed Officer III's evaluations.

37. From 2006 through at least 2009 Plaintiff's Supervisor consistently rated Officer III's performance higher than the Plaintiff's, and in so doing, Officer III received certain wage increases that the Plaintiff did not receive.

38. So far as is presently known, from July of 2005 and to at least to December of 2009 Officer III received a 23% wage increase while the Plaintiff received only a 12% wage increase. Officer III also received wage increases and/or bonuses in 2010 as a result of Officer III's 2009 evaluation.

39.     Plaintiff's Supervisor gave Officer III better evaluations than the Plaintiff in order to give Officer III and not the Plaintiff certain wage increases.

40.     The Defendant has given conflicting, false, and nonsensical reasons why the Plaintiff was forced to work every weekend, why many of her job duties were taken from her and given to Officer III, and why Plaintiff evaluated every Officer at Animal Control except Officer III.

41.     The reasons given by the Defendant for their wrongful and unlawful actions toward the Plaintiff are so false, weak, implausible, and inconsistent that they are a subterfuge for discrimination against the Plaintiff based upon her age.

**FIRST CLAIM FOR RELIEF**
**(Retaliation in violation of 29 U.S.C. § 623 (d))**

42.     Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 5 – 41 as if set forth herein verbatim.

43.     The Defendant is an employer subject to the ADEA, 29 U.S.C. §621 *et seq*, 29 U.S.C. § 630(b).

44.     The Plaintiff filed a complaint against the Defendant with the UALD and EEOC for age discrimination in violation of the ADEA, and a charge was issued on September 7, 2010.  The Defendant received a copy of the charge on or before September 13, 2010.

45.     On Tuesday September 28, 2010 Booth ordered the Plaintiff to meet with him and Plaintiff's Supervisor in Booth's office.  During the meeting Booth admonished the Plaintiff for not attending a training session even though it was scheduled on her day off, and even though her

supervisor previously told her that it was okay if she could not attend the training schedule because she had to accompany her husband to receive medical treatment

46. During the September 28, 2010 meeting, the Plaintiff was also admonished for working overtime, even though she was lawfully entitled to overtime pay, and even though the overtime resulted from, amongst other things, having to attend various training sessions which were scheduled on her day off, as well as having to perform the job duties of two persons during many of the weekend shifts.

47. At the conclusion of the September 28, 2010 meeting the Plaintiff was ordered by Booth to attend a training session which was scheduled to occur on her next day off, Thursday September 30, 2010.

48. At the beginning of the meeting of September 28, 2010, Booth's actions were openly hostile and intentionally demeaning and intimidating.

49. Booth thereafter put a disciplinary warning letter in the Plaintiff's personnel file. Booth's actions occurred after the Plaintiff complained of age discrimination and were in retaliation for having complained.

50. Thereafter the Plaintiff amended her charge of discrimination to include the retaliatory actions of the Defendant surrounding the September 28, 2010 incident.

51. During the course of her employment the Plaintiff always received good performance evaluations. The Plaintiff did not receive a performance evaluation in 2010. In March of 2011, after the Plaintiff filed her charge of discrimination, Plaintiff's Supervisor rated the Plaintiff's performance much lower than he had ever done before.

52.     Plaintiff's Supervisor' evaluation of the Plaintiff was drastically different from his prior evaluations of her, in many ways, including the following:

    A.     In prior evaluations Plaintiff's Supervisor consistently rated the Plaintiff above average (4 out of 5 points) in the area of career development, but in the 2011 evaluation he rated her less than average (2).

    B.     In prior evaluations Plaintiff's Supervisor had consistently rated the Plaintiff above average in the area of leadership (4 out of 5) but in the 2011 evaluation he rated her less than average (2 out of 5).

    C.     In prior evaluations Plaintiff's Supervisor had consistently rated the Plaintiff above average ( 3's and 4's out of 5) in policy conformance, but in the 2011 evaluation he rated her less than average (2 out of 5).

    D.     In prior evaluations Plaintiff's Supervisor had consistently rated the Plaintiff above average ( 3's and 4's out of 5) in communication, but he rated her less than average (2 out of 5) in the 2011 evaluation.

    E.     In 2009 Plaintiff's Supervisor described the Plaintiff's career development performance as "Actively participates in career development and contributes to keep up to date in the field". In 2011 Plaintiff's Supervisor described the Plaintiff's career development as "Has mild interest in improving basic skills and knowledge. Keeps up to date only as directed to do so".

    F.     In 2009 Plaintiff's Supervisor described the Plaintiff's conformance with policy as, "Consistently follows policies and procedures and addresses concerns through established

methods." In 2011 Plaintiff's Supervisor described the Plaintiff's conformance with policy as, "Has knowledge of policies and procedures and only follows when convenient. *Voices disagreement inappropriately*."

53. The Defendant's actions were discriminatory and in retaliation for asserting her rights under the ADEA and for filing a charge of age discrimination/retaliation.

54. The Plaintiff has suffered damages as a result of the Defendant's unlawful actions, including but not limited to loss of enjoyment of life, embarrassment, humiliation and emotional distress, pain and suffering.

55. The Plaintiff is entitled to recover all legal and/or equitable remedies and relief to which she is entitled as a result of the Defendants' unlawful retaliation.

## SECOND CLAIM FOR RELIEF
(Age discrimination in violation of 29 U.S.C. §623 )

56. Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 5through 55 as if set forth herein verbatim.

57. The Defendant intentionally and without lawful reason mistreated the Plaintiff, forced her to work outrageous shifts, took some of her supervisory duties away from her and gave them to a younger employee, gave her less wage increases than a younger employee, which wage increases the Plaintiff was entitled to receive, and committed all of the acts set forth in paragraphs 5through 55 on account of the Plaintiff's age.

58. The Defendant intentionally and without lawful reason mistreated the Plaintiff, forced her to work outrageous shifts, took some of her supervisory duties away from her, paid her less

12

wages than she was entitled to received, and committed all of the acts set forth in paragraphs 5 through 58 in an attempt to force the Plaintiff to resign her employment on account of her age.

59. But for the Plaintiff's age, the Defendant would not have acted as set forth in paragraphs 5 through 58.

60. The Defendant, by its actions, has violated the ADEA, 29 U.S.C. §623, *et seq.*

61. The Plaintiff has suffered damages as a result of the Defendant's unlawful actions, including but not limited to lost wages, loss of enjoyment of life, embarrassment, humiliation and emotional distress, pain and suffering.

62. The Plaintiff is entitled to recover all legal and/or equitable remedies and relief to which she is entitled as a result of the Defendants' unlawful discrimination.

## **REQUEST FOR RELIEF**

63. WHEREFORE, the Plaintiff requests the Court to enter Judgment for Plaintiff and against the Defendant, and for the following damages, so far as is presently known:

    A. Compensation for all damages she suffered as a result of the Defendant's retaliation and discrimination, including but not limited damages for emotional distress, pain and suffering, and anxiety;

    B. Compensation for lost past and future wages;

    C. Attorney fees, costs and expenses incurred as a result of the Defendant's discrimination and retaliation;

    D. An Order enjoining the Defendant from discriminating and retaliating because of age and other protected status.

       E.      For such other and additional relief to which the Plaintiff is entitled.

## **JURY DEMAND**

64.    The Plaintiff hereby requests that this matter be tried before a jury.

DATED this March 15, 2012

                                                                       By: __/s/_____
                                                                        Gabrielle Lee Caruso (7368)
                                                                         Attorney for Plaintiff
                                                                         1790 Bonanza Suite E-240
                                                                         Park City, UT  84060
                                                                         lcaruso@leecaruso.com
                                                                         435-649-1188